1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10
BENJAMIN ELLIS,
11
                   Plaintiff,              No. CIV S-03-2622 DFL PAN P
12       vs.

13   S. WHEELER, et al,

14           Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16           Plaintiff is a state prisoner proceeding pro se, seeking relief pursuant to 42 U.S.C.

17   § 1983.  Plaintiff is an inmate at High Desert State Prison (HDSP), Susanville, California, who

18   filed his second amended complaint on August 30, 2004.  Plaintiff complains that defendants,

19   two correctional officers at the prison, violated his right to be free from cruel and unusual

20   punishment under the Eighth Amendment to the Constitution.  Plaintiff argues that defendants'

21   actions created the potential for serious injuries, and caused plaintiff to suffer actual injuries and

22   mental distress.  Plaintiff seeks compensatory damages in the amount of $150,000 and punitive

23   damages in the amount of $250,000 from each defendant, as well as the cost of this suit and

24   reasonable attorneys fees.

25           On November 18, 2005, defendants filed a motion for summary judgment.  On

26   November 21, 2005, plaintiff filed a cross-motion for summary judgment.  Plaintiff responded to

1

1  defendants' motion on December 2, 2005; defendants responded to plaintiff's cross-motion on

2  December 5, 2005.

3          In their motion, defendants argue that plaintiff has failed to offer any evidence that

4  defendants engaged in any behavior that violates plaintiff's rights under the Constitution or

5  statute.  In addition, defendants state that plaintiff's claim under the Americans with Disabilities

6  Act cannot lie as defendants are not public entities.  Finally, defendants contend that they are

7  entitled to qualified immunity because their actions did not violate a clearly established

8  constitutional right.

9          In his cross-motion for summary judgment, plaintiff repeats the essential elements

10  of his second amended complaint.  Plaintiff argues that defendants were deliberately indifferent

11  to his physical condition.  As a result of defendant's behavior plaintiff contends that he suffered

12  both the risk of potential serious injury and actual injury.

13      A.  Summary Judgment Standards Under Rule 56

14          1. Legal Standard for Summary Judgment

15          Summary judgment is appropriate when it is demonstrated that the standard set

16  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

17  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

18  as a matter of law."  Fed. R. Civ. P. 56(c).

19          Under summary judgment practice, the moving party

20          always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
21          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
22          demonstrate the absence of a genuine issue of material fact.

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

24  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

25  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

26  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

1  after adequate time for discovery and upon motion, against a party who fails to make a showing

2  sufficient to establish the existence of an element essential to that party's case, and on which that

3  party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

4  failure of proof concerning an essential element of the nonmoving party's case necessarily

5  renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

6  granted, "so long as whatever is before the district court demonstrates that the standard for entry

7  of summary judgment, as set forth in Rule 56(C), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

8        If the moving party meets its initial responsibility, the burden then shifts to the

9  opposing party to establish that a genuine issue as to any material fact actually does exist.

10  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356

11  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

12  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

13  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

14  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

15  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

16  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

17  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

18  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

19  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

20  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

21        In the endeavor to establish the existence of a factual dispute, the opposing party

22  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26  /////

1   genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

2   56(e) advisory committee's note on 1963 amendments).

3           In resolving the summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any.  Fed. R. Civ. P. 56(C).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>,

6   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

7   placed before the court must be drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S.

8   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

9   opposing party's obligation to produce a factual predicate from which the inference may be

10  drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

11  <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

12  party "must do more than simply show that there is some metaphysical doubt as to the material

13  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct.

15  1356 (citation omitted).

16          On November 17, 2004, the court advised plaintiff of the requirements for

17  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rand v.</u>

18  <u>Rowland</u>, 154 F.3d 952, 960-1 (9th Cir. 1998) (en banc),  <u>cert.</u> <u>denied</u>, 527 U.S. 1035 (1999), and

19  <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

20          2.  Discussion

21          a.  Facts

22          Plaintiff was shot in 1985.  The bullet damaged his spinal cord leaving plaintiff a

23  paraplegic with use of his arms and upper torso.  While plaintiff has used leg braces in the past to

24  ambulate, he is currently confined to a wheelchair.

25          On September 29, 2000, all prisoners at HDSP were ordered searched as a result

26  of the fact that metal was discovered missing from the prison.  The search to be conducted was

4

1    an unclothed, full body search, commonly known as a strip search.  Defendant Sears approached

2    plaintiff's cell to conduct the required search.  Defendant Sears has been employed as a

3    correctional officer at HDSP for six years.  Plaintiff refused to remove his clothing when asked

4    by defendant Sears.  Plaintiff's cell mate was present in the cell and completed his search without

5    incident.

6            As a result of plaintiff's refusal to participate in the search, defendant Sears called

7    his supervising officer, defendant Wheeler, for assistance.  Defendant Wheeler, a 12 year veteran

8    of the California Department of Corrections and Rehabilitation, is a Correctional Sergeant who

9    has worked at HDSP for the past 11 years.  Plaintiff was handcuffed and transported by

10   defendant Wheeler and a correctional officer to a staff office.  Plaintiff was placed in a chair

11   within the office and the unclothed search was performed.  In addition, defendant Wheeler

12   searched plaintiff's wheelchair.  Plaintiff was then taken back to his cell.  Defendant Sears

13   pushed plaintiff back into his cell.

14           Upon closing the door to the cell, defendant Sears ordered plaintiff to come to the

15   food slot in the cell door so that his handcuffs could be removed.  Plaintiff did not come to the

16   door.  Defendant Sears once again called defendant Wheeler for assistance.  Defendant Wheeler

17   repeated defendant Sears' order, telling plaintiff to come to the door to have his handcuffs

18   removed.  As plaintiff's hands were cuffed, he was unable to push his wheelchair and comply

19   with either order.  Defendant Wheeler then told plaintiff's cell mate to push plaintiff's

20   wheelchair to the cell door so that the handcuffs could be removed.  The cell mate did not do as

21   instructed.

22           After removing plaintiff's cell mate from the cell, defendant Wheeler ordered a

23   correctional officer to take plaintiff in his wheelchair to a holding cell.  The holding cell was

24   approximately four feet by four feet, large enough to accommodate plaintiff in his wheelchair.

25   Plaintiff remained in the cell for 30 minutes, at which time his handcuffs were loosened by a

26   /////

5

1  correctional officer.  Defendant Wheeler then checked on plaintiff, who responded by making

2  threatening remarks and shouting obscenities.

3    A few minutes later, correctional officers found plaintiff on the floor of the

4  holding cell, between his wheelchair and the wall.  Plaintiff was treated by medical personnel at

5  the prison.  As a result of his fall, plaintiff suffered new injuries to his neck and spine that

6  required hospitalization and treatment at the regional medical facility.

7    b.  Cruel and Unusual Punishment Under the Eight Amendment

8    i.  Defendant Wheeler

9    Plaintiff alleges that defendant Wheeler's order that plaintiff wheel himself to his

10  cell door in order to allow for his handcuffs to be taken off was unreasonable.  In addition,

11  plaintiff argues that defendant Wheeler forced plaintiff to undergo his strip search while in a

12  dangerous and unstable office chair, risking serious injury.  Plaintiff also argues that defendant

13  Wheeler's act of ordering plaintiff to a holding cell was the cause of the injuries suffered when

14  plaintiff fell to the floor of the holding cell.  Finally, plaintiff states that defendant Wheeler is

15  liable as a supervisor for the acts of defendant Sears and others.  In spite of his vigorous

16  prosecution of this case, plaintiff fails to demonstrate any violation of a constitutionally protected

17  right.  The undersigned finds that Defendant Wheeler's motion for summary judgment should be

18  granted; and that plaintiff's cross motion should be denied

19    (A) Request to Come to Cell Door to Remove Handcuffs

20    Plaintiff complains that defendant Wheeler unreasonably demanded that plaintiff

21  move his wheelchair to the food slot in the cell door so that his handcuffs could be removed.

22  Even assuming the harshest of tones in this request, verbal harassment does not constitute cruel

23  and unusual punishment.  Oltarzewski v.Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)(directing

24  vulgar language at inmate does not state constitutional claim).  Plaintiff has presented no

25  evidence that defendant Wheeler even used vulgar language, that his demands were excessive for

26  /////

1   the prison setting, or that they were intended to cause psychological harm to plaintiff.  See

2   Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996).

3           According to plaintiff, defendant Wheeler's demand to come to the cell door was

4   unreasonable because plaintiff's foot had fallen off the wheelchair and was caught between the

5   chair and the floor.  Any movement by plaintiff could have resulted in serious injury as plaintiff

6   might have fallen to the ground.  Plaintiff contends that defendant Wheeler ignored this situation

7   and that his demand to move could have resulted in serious injury.

8           "[T]he treatment a prisoner receives in prison and the conditions under which he

9   is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509

10  U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).  To violate the Eighth Amendment,

11  prison officials must be sufficiently culpable.  See Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct.

12  2321,2323, 115 L.Ed.2d 271(1991).  Prison officials violate the Eighth Amendment when they

13  show "deliberate indifference" to a substantial risk of serious harm to an inmate.  Farmer v.

14  Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994).

15          A claim of deliberate indifference must establish two elements.  First, prison

16  officials must know of an excessive risk to a prisoner's safety.  Farmer, 511 U.S. at 837, 114

17  S.Ct. at 1979.  Second, the official must disregard that risk.  Id.  Deliberate indifference requires

18  both a subjective awareness of facts from which one could infer that injury might result, as well

19  as the actual inference.  Id.; Wilson, 501 U.S. at 299, 111 S.Ct. at  2324 (requiring inquiry into

20  prison officials' state of mind in order to show deliberate indifference).  Plaintiff has failed to

21  make any showing of deliberate indifference.[1]

22          The evidence fails to establish that either defendant Wheeler knew of the risk to

23  plaintiff's safety as a result of the fact that his foot had come off his wheelchair, or that Wheeler

24

25          [1]Plaintiff incorrectly cites to an objective standard in his complaint, arguing that "a
    reasonable and prudent person would perceive" that a paraplegic might be exposed to a greater
26  risk as a result of defendant's actions.  (Pl.'s Compl. 7.)

1  intentionally disregarded that risk.  Plaintiff's foot became lodged between his chair and the floor

2  upon his return to the cell.  However, defendant Wheeler did not take plaintiff to his cell

3  following his search in the staff office, and there is no indication that Wheeler was informed by

4  defendant Sears, the officer who did return plaintiff to his cell, of the situation.  Furthermore,

5  plaintiff makes no claim that he reported the situation to defendant Wheeler or the potential risks

6  of injury that might result.

7          In addition, there is no evidence to establish that defendant ought to have been

8  aware of the situation.  Even if defendant's had seen plaintiff's foot, there is no evidence that

9  plaintiff suffered from a series of spasm such that a reasonable officer might be alerted to the risk

10  of injury.  There is no indication of prior injuries suffered by plaintiff or other wheelchair bound

11  inmates at the prison as a result of similar predicaments.  To require defendant Wheeler to have a

12  subjective awareness of a risk of which he had no knowledge and to which he had never been

13  exposed would ask more than the law demands.

14          Plaintiff's argument that he could be injured does not support his claim that

15  defendant violated his constitutional rights.  Even assuming defendant Wheeler demonstrated

16  deliberate indifference to plaintiff's condition, plaintiff does not allege that any injury occurred.

17  As a result, he has no claim against defendant Wheeler.  See Wood v. Housewright, 900 F.2d

18  1332 (9th Cir. 1990)(holding that deliberate indifference claim for delay in medical treatment

19  required showing of substantial harm); cf. Hunt v. Dental Department, 865 F.2d 198, 199 (9th

20  Cir. 1989)(holding that three month delay in replacing dentures, causing gum disease and

21  possible weight loss constituted Eighth amendment violation).  Absent some injury, plaintiff's

22  claim must be dismissed.

23          While a tragic event need not happen in order for the courts to order an

24  appropriate injunctive remedy under the Eighth Amendment, plaintiff does not seek such relief in

25  this case.  See Helling, 509 U.S. at 33, 113 S.Ct. at 2481; Rhodes v. Chapman, 452 U.S. 337,

26  352, n.17, 101 S.Ct. 2392, 2402, n.17, 69 L.Ed.2d 59 (1981).  Rather, plaintiff seeks monetary

8

1   redress for the risk of injury suffered because of his strip search.  Such a claim is not actionable

2   under the Constitution.

3          Claims raised under § 1983 are analyzed using many of the principles found in

4   tort law.  See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 216

5   F.3d 764, 783 n.34 (9th Cir. 2000)(quoting City of Monterey v. Del Monte Dunes at Monterey,

6   Ltd., 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999)).  Consequently, any claim

7   alleging deliberate indifference must establish that, "but for" the defendant's indifference, injury

8   would not have occurred.  White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990).  Plaintiff cannot

9   make that showing in this case as he cannot establish any injury, physical or otherwise.  Plaintiff

10  did not suffer any spasm or falls from his chair during this incident.  Also, while a disciplinary

11  report was completed by corrections officers alleging that plaintiff failed to comply with an

12  order, (Pl.'s Compl. 52-53), on review, prison officials dismissed the charge noting that

13  compliance was impossible given the fact that plaintiff was handcuffed, (Pl.'s Compl. 54).

14          Furthermore, plaintiff has no claim for mental injury and subsequent relief under

15  42 U.S.C. 1997e(e).  Any claim for mental injury alleged under this statute requires a showing of

16  physical injury "that need not be significant but must be more than de minimis."  Oliver v.

17  Keller, 289 F.3d 623, 626 (9th Cir. 2002).  Plaintiff suffered no physical injury during this

18  incident; therefore, no such claim for mental injury is possible.

19          (B) Deliberate Indifference to Risk of Injury During Search

20          Plaintiff alleges that defendant Wheeler forced plaintiff to undress while seated in

21  an unsafe office chair.  As a result of this order, plaintiff charges that defendant Wheeler was

22  deliberately indifferent to the possibility that injury might occur if plaintiff fell from the chair.

23  Plaintiff contends that defendant Wheeler's actions created an unsafe condition that could have

24  injured plaintiff.

25          Plaintiff provides no evidence that defendant Wheeler knew of a risk of

26  undressing in a standard office chair, or that he consciously disregarded that risk.  Farmer, 511

9

1 U.S. at 837, 114 S.Ct. at 1979.  While plaintiff states that he told defendant Sears of his inability

2 to undress in the wheelchair and his need to lie down in order to accommodate an injured

3 shoulder, he provides no evidence that this information was communicated to defendant

4 Wheeler.  Furthermore, there is no history of difficulty or any prior injuries suffered by plaintiff

5 or other wheelchair bound inmates that would place defendant Wheeler on notice that such a

6 situation was potentially dangerous.

7          In addition, there is no evidence of any outward manifestation of difficulty in

8 complying with the order to undress that would place defendant Wheeler on notice that such

9 actions risked injury to plaintiff.  See Anthony v. Dowdle, 853 F.2d 741, 743 (9th Cir. 1988).

10 Plaintiff complied with the order to undress and the search was accomplished without further

11 incident.  There is no evidence of any difficulty, need for assistance, or excessive time required.

12 The evidence fails to establish any subjective knowledge by defendant Wheeler of any risk to

13 plaintiff, or his conscious disregard of that risk.

14          Finally, and perhaps most importantly, plaintiff completed his search without

15 incident and returned to his cell.  There is no claim that any physical injury resulted from the

16 actions of defendant Wheeler in the staff office.  While defendant Wheeler in certain

17 circumstances might responsible for any harm resulting from his actions, it must first be

18 established that he did in fact inflict some harm.  Gibson v. County of Washoe, Nev., 290 F.3d

19 1175, 1192 (9th Cir. 2002).  Plaintiff's complaint alleging what might have happened does not

20 meet this standard.

21          (C) Placement in Holding Cell and Resulting Injury

22          Plaintiff alleges that defendant Wheeler's act of placing him in a holding cell

23 directly resulted in the injuries that occurred when plaintiff fell from his wheelchair.  According

24 to plaintiff, the holding cell was without any safety rails that would permit a wheelchair bound

25 inmate to steady himself.  As such, it failed to comply with the Americans with Disabilities Act

26 (ADA).

1    The standard for a deliberate indifference claim is described above.  Any legal

2    theory that defendant Wheeler acted with deliberate indifference by ordering plaintiff into the

3    holding cell is without merit.  There is no evidence to establish that defendant Wheeler was

4    subjectively aware of any dangerous condition or that he proceeded in spite of it.  Based upon the

5    pleading, motions, and declarations, no rational trier of fact could find otherwise.

6    The same result holds when the claim is analyzed under a different standard.

7    While plaintiff does not specifically allege that placement in the holding cell was a dangerous

8    condition, his complaint raises such a cause of action.  However, there is no evidence to support

9    a claim that defendant Wheeler's act of ordering a spasmodic, wheelchair bound inmate into the

10    holding cell subjected him to dangerous conditions.

11    To establish this claim, plaintiff must pass both an objective and subjective test.

12    Allen v. Sakai, 48 F.3d 1082, 1083 (9th Cir. 1995).  First, plaintiff must show that the condition

13    of his confinement posed a substantial risk of serious harm.  Farmer, 511 U.S. 825, 834, 114

14    S.Ct. 1977.  Second, plaintiff must show that defendant knew of the risk and ignored it.  Id. at

15    837, 1979.  As with the deliberate indifference claim, plaintiff also fails to establish the elements

16    of a dangerous condition.

17    The facts used to analyze both claims are the same.  Plaintiff presents no evidence

18    that placement of a wheelchair bound inmate in a holding cell poses a serious risk of injury.

19    Plaintiff was placed in a cell large enough to accommodate his wheelchair.  There is no

20    indication that such a situation was something that defendant Wheeler should have subjectively

21    recognized to be unsafe, or that the condition was objectively unsafe.

22    Furthermore, there is no evidence to support the notion that defendant Wheeler

23    subjectively knew that plaintiff could injure himself while in the holding cell.  Plaintiff has not

24    established that he was a frequent victim of involuntary muscle spasms violent enough to send

25    him to the floor, nor is there any evidence to show that defendant Wheeler was aware of

26    plaintiff's tendency to spasm in such a manner.  See  Jeffers v. Gomez, 267 F.3d 895, 914 (9th

1   Cir. 2001)(holding that actual awareness of the risk of injury is required to show a violation

2   under the Eighth Amendment).  Indeed, the medical records attached to plaintiff's complaint do

3   not demonstrate any history of violent spasm consistent with what is alleged to have caused

4   plaintiff's injuries.

5           While defendant Wheeler ordered plaintiff into the holding cell, he was not the

6   one who physically wheeled him to that location.  There is no evidence in the record that

7   defendant Wheeler knew plaintiff's leg had become caught between his chair and the holding cell

8   wall, nor can plaintiff establish that he alerted any party to this fact or the risk of spasm.  In fact,

9   the evidence shows that while in the holding cell, plaintiff complained only about his handcuffs,

10  not about his legs.[2]

11          Finally, there is no merit in plaintiff's contention that defendant Wheeler's actions

12  violated the ADA.  The ADA does not apply to state officials in their individual capacity.

13  Vinson v. Thomas, 288 F.3d 1145, 1155 (9th Cir. 2002).  As plaintiff has alleged only a violation

14  against defendant Wheeler in his individual capacity, there can be no ADA claim.

15          ii.  Defendant Sears

16          Plaintiff complains that defendant Sears unreasonably ordered plaintiff to remove

17  his clothes while seated in his wheelchair, instead of permitting him to lie on his bed as

18  requested.  Plaintiff further alleges that defendant Sears used excessive force upon returning

19  plaintiff to his cell after completion of the unclothed search in the staff office.  In addition,

20  plaintiff states that defendant Sears unreasonably requested that plaintiff come to the cell door to

21  have his handcuffs removed.  Finally, plaintiff challenges the search conducted in the staff office,

22

23          [2]Plaintiff argues in a footnote that defendant Wheeler is liable under a theory of
    "supervisory liability."  The doctrine of respondeat superior is generally inapplicable to claims
24  civil rights claims made under § 1983.  Monell v. New York Dept. Of Social Services, 436 U.S.
    658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.
25  1989)(holding respondeat superior applicable only when supervisor participated in or knew of the
    violations and failed to prevent them).  There is no evidence to support any theory of supervisor
26  liability.

arguing that defendant Sears violated his right to be free from the risk of injury.  Many of plaintiff's complaints mirror the complaints alleged against defendant Wheeler; their disposition is also the same.  Plaintiff has failed to establish any facts to support his allegation that defendant Sears violated his constitutional rights.

(A) Request to Remove Clothes While Sitting in Wheelchair

Plaintiff alleges that defendant Sears ordered him to undress while seated in his wheelchair.  Plaintiff refused.  As a result, plaintiff was taken to the staff office where a search was conducted by defendant Wheeler.

Plaintiff has raised no constitutional issue with his allegation.  As noted above, demanding that an inmate submit to a search is not a violation, even if done in a loud, offensive, or forceful way.  Oltarzewski, 830 F.2d at 136.  Further, since plaintiff did not comply with the order, there was no injury attributable to the order.

(B) Forcefully Returning Plaintiff to Cell

Plaintiff alleges that defendant Sears forcefully returned him to his cell following the search in the staff office, causing his leg to slip from his wheelchair and become lodged between the chair and the floor.  Plaintiff states that this act by defendant Sears was deliberately indifferent to his condition.  Even assuming the allegation to be true, plaintiff has not established any injury that occurred as a result of defendant Sears use of force to push plaintiff's wheelchair back into his cell.

Plaintiff's claim that defendant Sears acted with deliberate indifference when he returned plaintiff to his cell is without merit.  There is no evidence showing that defendant Sears knew his act would cause plaintiff's leg to fall from the chair.  The evidence does not establish that plaintiff made any objection to his handling, alerted defendant Sears or any other correctional officer to his situation, or explained the risk of serious injury that might result.  Defendant Sears was neither subjectively aware of any danger, nor did he proceed in spite of it.

/////

13

1    Finally, plaintiff has not alleged that any injury resulted from defendant Sears' action, only that

2    he could have been injured.

3            There is also no indication that defendant Sears used excessive force upon

4    pushing plaintiff back into his cell.  To establish a claim of excessive force, plaintiff must show

5    that the application of force "evince[s] such wantonness with respect to the unjustified infliction

6    of harm as is tantamount to a knowing willingness that it occur."  Whitley v. Albers, 475 U.S.

7    312, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).  In assessing whether the application of force

8    is wanton, inquiry must be made into the need for the application of force, the relationship

9    between the need and the amount of force used, the threat perceived by the officer, any effort to

10   temper the severity of the forceful response, the extent of the injury inflicted, and whether the

11   force was applied for a legitimate purpose.  Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995,

12   117 L.Ed.2d 156 (1992).  Unconstitutional force is not the objectively reasonable application of

13   force necessary for maintenance within the prison, but rather, malicious and sadistic force that

14   intends to cause harm.  See Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  Plaintiff

15   cannot make such a showing in this case.

16           The evidence establishes that defendant Sears pushed plaintiff back into his cell

17   following the search in the staff office.  Such an application of force was necessary to return

18   plaintiff to his cell given the fact that he was handcuffed and wheelchair bound.  Even assuming

19   defendant Sears did so with more force than necessary, it can hardly be called malicious or

20   sadistic.

21           Plaintiff alleges no injury as a result of defendant Sears's actions.  As noted

22   above, plaintiff was neither physically injured nor was he subjected to administrative action as a

23   result of this incident.  Absent some evidence of injury, a showing of malicious or sadistic force

24   is virtually impossible to make.

25           The other facts in the record support this notion.  Defendant Sears' pushing of

26   plaintiff's wheelchair did not send him into any of the fixed objects in his small, jointly occupied

14

1  cell upon his return; a virtual certainty had defendant Sears' actions been of the caliber required

2  for a constitutional violation.  Plaintiff offers no evidence that he objected to his handling.  There

3  is also no indication defendant Sears said anything while pushing plaintiff back into his cell, nor

4  is there any evidence that he deliberately maneuvered plaintiff's wheelchair in order to create the

5  uncomfortable position alleged.  At most, assuming all facts in the light most favorable to

6  plaintiff, defendant Sears' actions were a failure to exercise due care for plaintiff's safety and

7  interests, not cruel and unusual punishment.  Whitley, 475 U.S. at 319, 106 S.Ct. at 1084.

8                    (C) Request to Come to Cell Door to Remove Handcuffs

9            Plaintiff complains that a violation of his rights occurred when defendant Sears

10  ordered plaintiff to move to the cell door in order to have his handcuffs removed.  Plaintiff

11  argues that defendant Sears was deliberately indifferent to plaintiff's condition.  According to

12  plaintiff, defendant Sears' indifference created a potential for serious injury because plaintiff's

13  foot was caught between his wheelchair and the floor.

14            Plaintiff's argument as it concerns defendant Sears fails for the same reasons that

15  his arguments against defendant Wheeler fail.  Demanding that an inmate come to his cell door in

16  order to have his handcuffs removed is not cruel and unusual punishment.  Oltarzewski, 830 F.2d

17  at 136 (directing vulgar language at inmate does not state constitutional claim).  Plaintiff cannot

18  establish any violation of his rights.

19            In addition, plaintiff cannot show any deliberate indifference as a result of

20  defendant Sears' actions.  There was no evidence that defendant Sears' was aware of any risk of

21  injury as a result of his demand.  There is no evidence that he proceeded in spite of the risk.

22  Finally, no injury resulted during this encounter.  Plaintiff has failed to establish his claim.

23                    (D) Deliberate Indifference to Risk of Injury During Search

24            Plaintiff charges that defendant Sears violated his rights during the search in the

25  staff office.  Plaintiff argues that defendant Sears was deliberately indifferent to the possibility

26  /////

1 that injury might occur if plaintiff fell from the chair.  Plaintiff contends that defendant Sear's

2 actions created an unsafe condition that could have injured plaintiff.

3          As noted above, the evidence fails to establish any violation of plaintiff's

4 constitutional rights as a result of being placed on a chair and ordered to undress while in the

5 staff office.  Furthermore, plaintiff has not alleged, nor is there any evidence in the record to

6 show that defendant Sears was present during this incident.  As a result, absent some direct

7 causal connection, this claim against defendant Sears must be dismissed.  Fayle v. Stapley, 607

8 F.2d 858, 862 (9th Cir. 1979) (finding liability under § 1983 only upon a showing of personal

9 participation by the defendant); Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978).

10                    iii.  Qualified Immunity

11          Defendants argue that they have qualified immunity from suit.  Analyzing a claim

12 of qualified immunity requires the court to determine what right has been violated, whether the

13 right was clearly established so that a reasonable official would have been aware that his conduct

14 violated constitutional bounds, and whether a reasonable public official could have believed that

15 his conduct was lawful.  See Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996).  As explained in

16 detail above, plaintiff has failed to establish any violation of his Eighth Amendment right to be

17 free from cruel and unusual punishment.  Furthermore, when the facts are taken in the light most

18 favorable to plaintiff, it is impossible to establish that either defendant could have believed that

19 his conduct was unlawful. At most, plaintiff establishes that he was not handled with the level of

20 care required for wheelchair bound inmates.  He does not establish any unconstitutional conduct

21 by defendants.

22     B.  Conclusion

23          Defendants have demonstrated that they are entitled to judgment as a matter of

24 law.  There is no genuine issue as to any material fact that can support plaintiff's claims.

25 Plaintiff has failed to establish any actions on the part of either defendant that violates the Eighth

26 Amendment to the Constitution or any statutory rights.

16

1    Accordingly,  IT IS HEREBY RECOMMENDED that defendants' November 18,

2  2005 summary judgment motion be granted and plaintiff's November 21, 2005 cross-motion for

3  summary judgment be denied.

4    These findings and recommendations are submitted to the United States District

5  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

6  fourteen days after being served with these findings and recommendations, any party may file

7  written objections with the court and serve a copy on all parties.  Such a document should be

8  captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are

9  advised that failure to file objections within the specified time may waive the right to appeal the

10  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  DATED:  August 25, 2006.

12

13                    UNITED STATES MAGISTRATE JUDGE

14

15  13/1983
    Ellis.2622.pris.msj.wpd
16

17

18

19

20

21

22

23

24

25

26

                                17